## A03A2112. PIPPINS v. THE STATE.
### (588 SE2d 278)

BLACKBURN, Presiding Judge.

Following his conviction by a jury of aggravated child molestation[1] and aggravated sexual battery,[2] Andre Pippins appeals, arguing, among other things, that: (1) the evidence was insufficient to support his conviction; (2) the State failed to establish venue in Fulton County; (3) there was a fatal variance between the allegations of the indictment and the proof offered at trial; (4) he was denied effective assistance of counsel; and (5) the statements of the child victim were improperly admitted as they lacked sufficient indicia of reliability. For the reasons set forth below, we affirm.

1. Pippins contends that the trial court erred in denying his motion for directed verdict because the evidence was insufficient to support his convictions.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. A motion for a directed verdict in a criminal case should only be granted when there is *no conflict* in the evidence and the evidence demands a verdict of acquittal as a matter of law. Moreover, on appeal the evidence must be viewed in the light most favorable to the verdict, [Pippins] no longer enjoys the presumption of innocence, and the appellate court determines the sufficiency, not the weight of the evidence,

[1] OCGA § 16-6-4.
[2] OCGA § 16-6-22.2.

and does not judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve.

*Davenport v. State.*[3]

Viewed in the light most favorable to the jury's verdict, the evidence shows that at the time of the crimes, Pippins was living with Jacqueline Waller and her two daughters, T. W., who was ten years old, and Y. W., the four-year-old victim. On the morning of September 2, 1997, Pippins and Y. W. walked Waller to the bus stop so that she could take the bus to work, and then returned home. Shortly thereafter, Y. W. went to the bathroom. T. W., who was dressing for school, looked through the open bathroom door and saw blood coming down Y. W.'s leg. At Pippins's request, T. W. cleaned Y. W. up and put her bloodstained underwear in the dirty clothes. When T. W. asked Y. W. if anything was wrong, Y. W. replied that nothing was the matter.

T. W. caught her bus for school, but Y. W.'s bus did not come. After learning that the bus would not be coming because Waller had neglected to pay the bus fee, and needing to go to work himself, Pippins left Y. W. in the care of a neighbor, Angela Hayes.

When Waller called Pippins at work at about 2:00 p.m., Pippins told her that Y. W. had been bleeding and had started her period. Waller picked up Y. W. at Hayes's apartment about 4:00 p.m., found the bloody underwear in the laundry closet, and took Y. W. to the emergency room. Dr. Theresa Randolph, the attending physician, examined Y. W. and found generalized irritation in her vaginal area and a tear of the labia minora. Dr. Randolph testified that the labial tear was consistent with "[m]olestation, touching, fondling. A fondling episode, some sort of sexual abuse."

After her daughter was discharged from the hospital, Waller and a police officer took Y. W. to the home of Shirley Harris, Y. W.'s grandmother, to spend the night, since the police advised that Y. W. could not go back to her own home if Pippins was a suspect. The next day, Y. W. told her mother that Pippins had "slapped her, put a pillow over her face and put his hand up in her." On that same day, Investigator J. L. Weldon of the Atlanta police sex crimes division interviewed Y. W. at her grandmother's home, and Y. W. told him the same story she had told her mother. Y. W. also repeated the story to Harris.

Pat Lawyer, a child advocate with the Georgia Center for Children, interviewed Y. W. and a videotape of that interview was shown to the jury. In the taped interview, Y. W. tells the same story she told her mother, grandmother, and the investigator.

---

[3] *Davenport v. State*, 255 Ga. App. 593 (1) (565 SE2d 900) (2002).

Finally, Niam Hasson, an investigator with the Fulton County Department of Family and Children Services, testified that he had gone to Y. W.'s school to interview her after he learned that Pippins, who was out on bond and not supposed to contact Y. W. or her family, had been in Waller's apartment for three days in July 1998. Y. W. confirmed that Pippins had been in their home. She also said that she knew Pippins was not supposed to be at their home "[b]ecause he messed with my privates before when he was living there." This evidence was sufficient to allow the jury to find beyond a reasonable doubt that Pippins was guilty of aggravated child molestation and aggravated sexual battery.

2. Pippins argues that the State failed to prove beyond a reasonable doubt that the crimes were committed in Fulton County.

> Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

(Citations omitted.) *Chapman v. State.*[4] "The phrase 'reasonable doubt' does not mean 'beyond all doubt or to a mathematical certainty.'" *Harris v. State.*[5]

Pippins contends that it was never established at trial that Y. W. lived at 425 Chapel Road on the date of the incident, and that there was no evidence that the incident occurred at 425 Chapel Road. Testimony at trial established that the crimes were committed on September 2, 1997, when Pippins, Waller, and Waller's two daughters, T. W. and Y. W., were living together. Y. W., in the videotaped interview, stated that Pippins made her bleed in her panties and touched her in his room in the apartment on Chapel Road. Waller testified that at the time she, Pippins, and her two daughters, T. W. and Y. W., lived together, they lived at 425 Chapel Road, and that 425 Chapel Road is in Fulton County. The testimony of Hasson, the Fulton County DFACS investigator, also was evidence that the home where the crimes were committed was in Fulton County. The jury was authorized to find that the DFACS investigator "acted within the territorial jurisdiction in which he testified he was employed," i.e.,

---

[4] *Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002).
[5] *Harris v. State*, 257 Ga. App. 42, 44 (1) (570 SE2d 353) (2002).

Fulton County, *Chapman*, supra at 318 (4), and that Y. W. was living in the same apartment at 425 Chapel Road at the time Hasson investigated Pippins's presence in the home, given Y. W.'s statement that she knew Pippins was not supposed to make contact because "he messed with my privates before when he was living there." Testimony also established that Y. W. was not bleeding before Waller left for work, but that the bleeding occurred after Pippins and Y. W. returned to the apartment when Pippins, T. W., and Y. W. were the only ones in the apartment. "As [Pippins] has offered no evidence to the contrary, we conclude that the State met its burden of proving beyond a reasonable doubt that venue of the crimes charged is properly in Fulton County." *Robinson v. State.*[6]

3. Pippins next contends that his conviction must be reversed because there was a variance between the allegations in the indictment and the proof at trial. Specifically, Pippins argues that both counts of the indictment charged him with committing crimes by inserting his fingers into the victim's vagina, but that no evidence was presented at trial that he had penetrated the victim's vagina. This argument is without merit.

First, evidence was presented at trial that Pippins penetrated Y. W.'s vagina. Waller testified that Y. W. told her that Pippins "slapped her, put a pillow over her face and put his hand up in her." This was sufficient to show penetration.

Second, even without Waller's testimony, there was no fatal variance between the indictment and the evidence presented at trial.

> Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.

*Buice v. State.*[7]

Count 1 of the indictment charged Pippins with aggravated child

---

[6] *Robinson v. State*, 275 Ga. 143, 144 (2) (561 SE2d 823) (2002).

[7] *Buice v. State*, 239 Ga. App. 52, 58 (4) (520 SE2d 258) (1999).

molestation in that he "did unlawfully take immoral, improper, and indecent liberties with the person of [Y. W.], a child under the age of sixteen (16) years, by inserting his fingers into her vagina, with intent to arouse and satisfy his sexual desires, said act involving physical injury to said child by causing her vaginal area to bleed." Count 2 charged Pippins with aggravated sexual battery in that he "did intentionally penetrate with a foreign object, to wit: his fingers, the vagina of [Y. W.], a four (4) year old child, without the consent of [Y. W.]" The language of the indictment sufficiently apprised Pippins of the charges against him, and did not mislead or prejudice him as to the criminal acts with which he was charged. *Buice*, supra at 59. Accordingly, any variance was not fatal.

4. In several enumerations of error, Pippins contends that he was denied effective assistance of counsel. We begin our consideration of Pippins's claims of ineffective assistance by noting that

> [i]n order to establish ineffectiveness of trial counsel under *Strickland v. Washington*,[8] [Pippins] must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. In addition, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Punctuation omitted.) *Herndon v. State*.[9]

(a) Pippins asserts that he was denied effective assistance of counsel both because his trial counsel failed to call as a witness an expert on child interviewing techniques, and also because trial counsel failed to call an expert medical witness to rebut the State's medical expert. These assertions are meritless.

> The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or

---

[8] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).
[9] *Herndon v. State*, 235 Ga. App. 258, 259 (509 SE2d 142) (1998).

> strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of counsel after consultation with the client. Trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.

(Punctuation and footnotes omitted.) *Mack v. State*.[10]

Pippins's trial counsel testified in the hearing on the motion for new trial that, although she consulted a psychologist who was an expert on child interviewing techniques and considered presenting his testimony at trial, she decided not to call him because she did not see the need for expert testimony. "She felt that the videotaped interview with the child was fair, ample, and credible, and could be evaluated properly by the jury." This was "a strategic or tactical decision by trial counsel and therefore does not constitute ineffective assistance of counsel absent a contrary showing." *Herndon*, supra at 259.

As for the expert medical witness, trial counsel testified that she had consulted a pediatrician about having a medical expert and was told that a pediatrician would not be able to testify about Y. W.'s injury without more information than was available in the medical report from the hospital, such as a photograph of the injury. Since trial counsel did not have a photograph of the injury or additional information which would have allowed a defense medical expert to call in question the testimony of the State's witness, she decided that it would be fruitless to hire such an expert. Further, she did not believe that the testimony of the State's witness conflicted with her theory of the case. As she explained at the hearing on the motion for new trial, "I would not have put a doctor up there knowing that they could not make a competent determination that the State's expert was not truthful. And the State's expert didn't say Mr. Pippins made that injury." Under these circumstances, trial counsel's decision not to call a medical expert was within the realm of trial tactics and strategy and provides no basis for a claim of ineffective assistance of counsel. *Herndon*, supra at 259.

It is clear that the trial court's determination that trial counsel was not ineffective for failing to call these expert witnesses was not clearly erroneous. These enumerations of error are, therefore, without merit.

---

[10] *Mack v. State*, 242 Ga. App. 256, 258 (2) (c) (529 SE2d 393) (2000).

(b) Pippins also argues that he was denied effective assistance of trial counsel because of trial counsel's general failure to investigate the case. In rejecting this argument, the trial court stated:

A review of this matter reveals that trial counsel opted into discovery, obtained disclosure of the State's entire file, reviewed the videotape interview of the child, conferred with the law enforcement investigator, talked with the mother of the small child, talked with the defendant on a number of occasions and undertook to talk with the defendant on several other occasions. Trial counsel had the medical reports and also had the prior arrest record of the defendant.

As a result, the trial court found that "defense counsel did conduct ample and responsible investigation into the facts of the case, and interviewed witnesses to a sufficient extent to understand the prosecution's evidence, and the issues and evidence which would need to be addressed during the course of the trial." Our review of the record confirms the trial court's evaluation of trial counsel's preparation for trial. Accordingly, the trial court did not clearly err in finding that Pippins received effective assistance of counsel with respect to his trial counsel's investigation of the case and preparation for trial.

(c) Pippins also maintains that he was denied effective assistance of counsel because trial counsel did not object when the State's medical expert testified to the ultimate issue in the case. This enumeration of error is meritless.

The State called Dr. Randolph as an expert in pediatrics. Dr. Randolph testified that Y. W.'s vaginal area had a generalized irritation and that there was a small tear of her labia minora. She opined that the redness and the tear were consistent with someone's fingernails rubbing across the vaginal area, and that the injuries were consistent with sexual abuse. She also testified that the labial tear was consistent with manipulation, and when asked to define manipulation, she stated, "Molestation, touching, fondling. A fondling episode, some sort of sexual abuse." Dr. Randolph did not state that Y. W. in fact had been molested, nor did she testify that Pippins had caused the injuries.

It is clear, under the decision of our Supreme Court in *Allison v. State*,[11] that Dr. Randolph did not testify as to the ultimate issue in the case, and that the admission of her testimony was not error. The jury, having the benefit of testimony that Y. W.'s injuries were consistent with sexual abuse, were fully capable of deciding, on their own, whether Y. W. in fact was abused and, if so, whether Pippins did it.

---

[11] *Allison v. State*, 256 Ga. 851, 853 (6) (353 SE2d 805) (1987).

Id. at 853. Further, since we find that there was no basis for excluding the doctor's testimony, it follows that trial counsel was not ineffective for failing to object to its admission. *Whited v. State*.[12]

5. Pippins next contends that the trial court erred in admitting Y. W.'s hearsay statements as such statements had insufficient indicia of reliability. Our review of the record indicates that all of Y. W.'s statements, including the statement she made during the videotaped interview and the statement she made to her grandmother, were admitted without objection. " 'In this state, it is necessary to object to evidence at the time it is actually offered, and failure to do so amounts to a waiver of any objection which might have been raised.' Thus, nothing has been preserved for our review." (Citation and footnote omitted.) *Craft v. State*.[13]

Anticipating our disposition of this issue, Pippins also argues that trial counsel's failure to object to the admission of Y. W.'s statements constituted ineffective assistance of counsel. At the hearing on the motion for new trial, trial counsel explained that she did not object to Y. W.'s videotaped statement because she felt that Y. W.'s demeanor on the tape was not consistent with that of a child who had been molested. The videotape was, therefore, consistent with her argument that there had no molestation. In light of this explanation, Pippins "has not overcome the strong presumption that his counsel's performance was not deficient and that his actions might be considered sound trial strategy." *Craft*, supra at 521 (13).

As to Y. W.'s statement to her grandmother, even assuming that the statement was inadmissible, any error in its admission was harmless as Harris's testimony was merely cumulative of other testimony presented at trial. *Xulu v. State*.[14]

6. Pippins's remaining enumerations of error are without merit. *Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED SEPTEMBER 30, 2003.

*Jodi Dick*, for appellant.
*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Anne E. Green, Assistant District Attorneys*, for appellee.

---

[12] *Whited v. State*, 258 Ga. App. 195, 199 (5) (573 SE2d 449) (2002).
[13] *Craft v. State*, 254 Ga. App. 511, 524 (15) (563 SE2d 472) (2002).
[14] *Xulu v. State*, 256 Ga. App. 272, 276 (4) (568 SE2d 74) (2002).