**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 1, 2014**

# In the Court of Appeals of Georgia

A14A0594. CREIGHTON v. THE STATE.

MILLER, Judge.

Following a jury trial, Airick Joseph Creighton was convicted of one count of aggravated child molestation (OCGA § 16-6-4 (a (1), (c)), one count of pimping (OCGA § 16-6-11), and possession of less than one ounce of marijuana (OCGA § 16-13-30 (j)).[1] Creighton appeals from the denial of his motion for new trial, contending that the evidence was insufficient, the State failed to prove venue and the trial court erred in denying his request to charge on mistake of fact. For the reasons that follow, we affirm.

---

[1] Creighton was acquitted on a second pimping charge and a charge of keeping a place of prostitution.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that the then 14-year-old victim, T. S., lived with her great aunt in DeKalb County. In June 2012, T. S. met and started corresponding with Creighton through Facebook. At some point, T. S. told Creighton that she was prostituting.

One day toward the end of July 2012, T. S. called Creighton and asked him for a ride. Creighton picked T. S. up in Mechanicsville and took her to a plaza in Gwinnett County. That same night, Creighton took T. S. to the Rite 4 Us motel in Gwinnett County where T. S. spent the night in a room with Creighton and Rodshaid Wright.

At some point, Creighton took pictures of T. S. on his computer, and T. S. used Creighton's computer to post four advertisements with those pictures on an adult entertainment website in early August 2012. The phone numbers listed in the advertisements rang Creighton's cell phone number.

T. S. met men through the advertisements, spoke with them on Creighton's phone, told them to come to Room 330 at the Extended Stay motel in Norcross in Gwinnett County and negotiated a price over the phone. At the motel, T. S. performed

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

sexual activities in exchange for money. T. S. always asked Creighton to leave the motel room during these activities.

Meanwhile, on August 6, 2012, T. S.'s aunt learned that T. S. was at Motel 6 in Norcross, which is located in Gwinnett County. By this time, T. S. had been away from her aunt's home for seven or eight days. The aunt showed a couple of people at the motel a flyer with T. S.'s picture on it, and they told the aunt that T. S. was in a particular room. The aunt then called police and gave them a physical description of T. S. and gave them the room number—Room 203.

As the aunt was leaving the motel that night, she saw T. S. leaving the motel, however, T. S. disappeared before the aunt could reach her. When the responding officer arrived at the motel, he saw two black females on the upper balcony. The officer noticed that one of the females had blonde streaks in her hair which matched the description of T.S. given by her aunt. The officer then spoke with T.S.'s aunt, who told the officer that T. S. left Room 203 and went towards the front of the motel.

The officer was unable to locate T. S. that night, however, he spoke with Wright, who had rented the motel room. The officer also looked around the motel room with Wright's permission and observed an open laptop computer on the bed. The computer showed a picture of a girl with blonde hair who matched the

3

description of T. S. The officer then ran a warrant check on Wright, discovered that Wright had an active warrant for a recent burglary, and arrested Wright on the outstanding warrant.

After a detective arrived, Wright consented to a search of his motel room. Since a TV and two computers had been stolen in the recent burglary, the detective was curious about the laptop he saw on the bed. Creighton, who was present during the search, told the detective that the laptop was his, so the detective opened the laptop to verify that it belonged to Creighton. The laptop was logged into T. S.'s Facebook account. The laptop also had multiple tabbed pages open on Internet Explorer, including Backpage.com, which listed ads for prostitution.

Later that day, the detective viewed T. S.'s public Facebook profile. The detective saw that T. S. and Creighton were friends and had communicated with each other on Facebook in the days prior to August 6. At that point, the detective suspected that Creighton and T. S. were involved in prostitution. The detective wrote up a report, printed out T. S.'s and Creighton's Facebook profile and gave the information to the vice unit for further investigation.

A special investigator with the Gwinnett County vice unit searched the internet looking for escort advertisements in the Norcross area, and found the advertisements

that T. S. had posted. On August 7, the investigator called the phone number listed in one of the advertisements and spoke to T. S. During the conversation, the investigator learned that T. S. was at the Extended Stay in Norcross and she was available for an hour. The investigator told T. S. that he would call her when he was off work and in the area.

A couple of hours later, the investigator called T. S. T. S. told the investigator that she was still taking appointments, but was not currently at her motel. The investigator told T. S. that he would stay in the area and asked her to call him if she got back within a reasonable time. The investigator did not hear from T. S again until after midnight when she texted him to say she was back in her motel.

The investigator next tried to contact T. S. around 3:00 p.m. on August 8, 2012. Another female answered the phone, and gave the investigator a different phone number where he could reach T. S. When the investigator called that number, T. S. answered. T. S. agreed to meet the investigator at her motel later that day, so the investigator assembled a team of officers and headed to the Extended Stay in Norcross.

When the investigator arrived at the Extended Stay motel, he called T. S. who said she was available in Room 330 which was Creighton's room. The investigator

saw Creighton and one of his friends walking along the third-floor balcony in the area of where the room was located. The investigator knocked on the door to Creighton's room, entered and walked through it, checking for weapons and any one hiding inside. The investigator then exchanged money with T. S. and gave the takedown signal.

The takedown team took Creighton and the other man into custody. During a consent search of Creighton's room, the investigator found two of Creighton's baseball hats that were pictured in one of T. S.'s Backpage.com advertisements. In Creighton's room, the investigator also found two condoms, Creighton's cell phone, a couple of marijuana cigarettes, a black leather wallet containing Creighton's identification card, and a large red notebook belonging to Creighton. Creighton's notebook contained records of his pimping business and listed him as the CEO/King and showed that he had five prostitutes working for him.

On August 8, 2012, T. S. gave a statement to investigators which was played for the jury at Creighton's trial. T. S. told investigators that she performed oral sex on Creighton "today" at the motel "we were at today." T. S. admitted at trial that she told investigators that she gave Creighton a "blow job," involving her mouth and his penis.

6

Creighton's custodial interview was also played for the jury at trial. In his interview, Creighton admitted having oral sex with T. S. and said that "I let her suck it." Creighton also admitted at trial that he possessed the marijuana found in his motel room at the Extended Stay in Norcross.

1. Creighton contends that the evidence was insufficient to support his convictions. We disagree.

(a) Aggravated Child Molestation

A person commits the offense of child molestation when such person does any immoral or indecent act with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person. OCGA § 16-6-4 (a) (1). A person commits the offense of aggravated child molestation when such person commits an offense of child molestation involving an act of sodomy. OCGA § 16-6-4 (c). Sodomy is defined, in pertinent part, as any sexual act involving the sex organs of one person and the mouth of another. See OCGA § 16-6-2 (a) (1).

The evidence at trial showed that T. S. told investigators on August 8, 2012 that she performed oral sex on Creighton. T. S. told investigators that the "blow job,"

involved her mouth and his penis. Accordingly, the evidence was sufficient to support Creighton's conviction for aggravated child molestation. See OCGA § 16-6-4 (c).

(b) Pimping

OCGA § 16-6-11 provides:

[a] person commits the offense of pimping when he or she performs any of the following acts: (1) Offers or agrees to procure a prostitute for another; (2) Offers or agrees to arrange a meeting of persons for the purpose of prostitution; (3) Directs or transports another person to a place when he or she knows or should know that the direction or transportation is for the purpose of prostitution; (4) Receives money or other thing of value from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution; or (5) Aids or abets, counsels, or commands another in the commission of prostitution or aids or assists in prostitution where the proceeds or profits derived therefrom are to be divided on a pro rata basis.

Additionally, a person convicted of pimping shall be guilty of a felony when such offense involves the prostitution of a person under the age of 18 years. See OCGA § 16-6-13 (b) (2); *Burroughs v. State*, 292 Ga. App. 580 (1) (665 SE2d 4) (2008).

The evidence, as set forth above, was sufficient to show that Creighton aided or abetted T. S., who was under the age of 18, in the commission of the crime of prostitution. Notably, Creighton took pictures of then 14-year-old T. S. which she

8

used to place advertisements seeking persons interested in sex for money; T. S. used Creighton's phone to take calls responding to the advertisements; and Creighton rented the room at the Extended Stay motel which T.S. used to meet persons who responded to her advertisements. Accordingly, the evidence was sufficient to convict Creighton of felony pimping.

(c) Possession of less than one ounce of marijuana.

Under OCGA § 16-13-30 (j) (1), it is unlawful for any person to possess marijuana. Since Creighton admitted that the marijuana found in his Gwinnett County motel room was his, the evidence was sufficient to conclude beyond a reasonable doubt that he was guilty of possession of less than one ounce of marijuana. See *Johnson v. State*, 299 Ga. App. 706, 710-711 (1) (e) ( 683 SE2d 659) (2009).

2. Creighton contends that the State failed to prove venue for the charged crimes. We do not agree.

Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable

9

doubt that the crime was committed in the county where the defendant was indicted.

(Citation and footnote omitted.) *Pippins v. State*, 263 Ga. App. 453, 455 (2) (588 S.E.2d 278) (2003).

The evidence showed that the act of aggravated child molestation occurred while T. S. and Creighton were at the Norcross Extended Stay motel in Gwinnett County. The evidence also showed that Creighton's actions in aiding and abetting T. S. in the commission of prostitution occurred at the Extended Stay motel in Gwinnett County. Finally, the evidence showed that Creighton admittedly possessed the marijuana found in his Gwinnett County motel room. Accordingly, the State met its burden of proving venue in Gwinnett County for the charged crimes beyond a reasonable doubt. See *Pippins*, supra, 263 Ga. App. at 455-456 (2).

3. Creighton contends that the trial court erred in failing to give his requested charge on mistake of fact. Specifically, Creighton argues that T. S. was well versed in deceiving men regarding her age and deception is an affirmative defense to certain sexual crimes. We discern no error.

Contrary to Creighton's argument, "[k]nowledge of the victim's age is not an element of the crime of child molestation . . . Since a mistaken belief as to the

victim's age would not have justified the act, a charge on mistake was not warranted." (Citations omitted.) *Veasey v. State*, 234 Ga. App. 795, 795-796 (1) (507 SE2d 799) (1998); see also *Schultz v. State*, 267 Ga. App. 240, 242 (2) (599 SE2d 247) (2004). Therefore, the trial court did not err in failing to give the requested charge.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*