A01A2172. GREESON v. THE STATE.
(558 SE2d 749)

BLACKBURN, Chief Judge.
A jury found Richard Eric Greeson guilty of theft by receiving stolen property, obstruction of an officer, and attempting to elude a police officer. On appeal, Greeson claims that the trial court erred by (1) allowing the victim to identify him in court, (2) denying his motion for a new trial on the grounds of newly discovered evidence,

---

and (3) sentencing him as a recidivist. He also claims a fatal variance in the indictment and the evidence produced at trial and that his trial counsel was ineffective. We find no reversible error and affirm.

> On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Greeson] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation omitted.) *Barber v. State.*[1]

Viewed in this light, the record shows that Jamie Long and her husband owned a 1997 Plymouth Breeze automobile. The car was stolen from their residence on March 21, 1999. The next day, while Jamie Long was a passenger in another car, the stolen Plymouth drove by in the other direction. The two cars passed within a few feet of each other, and Long could see the profile of the dark-haired male driver.

On April 3, 1999, Officer Firth of the Powder Springs Police Department detected a speeding Plymouth automobile; he activated the lights on his patrol car with the intent of stopping the car. Instead of stopping, the car sped away and led police from three jurisdictions on a high speed chase. The car crashed into a cemetery, and the officers continued the chase on foot after the driver exited the car and ran into a nearby subdivision. Police finally caught the driver, whom they identified as Greeson. When Officer Firth examined the inside of the car, he found that there was no ignition key and that the area around the steering column had been "busted out."

After the car crashed, the male passenger, Christopher Camp, fled and was apprehended by police. The female passenger, Jennifer Cole, stayed in the car. Before Greeson's trial, Camp pled guilty to theft by receiving stolen property in connection with the incident.

Greeson's defense was that he did not know the Plymouth was stolen. Camp testified that he stole the Plymouth, but told Greeson that he had purchased the car. Camp, a close friend of Greeson's, also admitted to four previous felony convictions for car theft. Camp testified that he had told Greeson that he had lost the keys to the car and that he asked his girlfriend's father, a mechanic, to "peel" the steering wheel so he could drive the car without keys. Camp further

---

[1] *Barber v. State*, 235 Ga. App. 170 (509 SE2d 93) (1998).

explained to the jury that he and Greeson were at Cole's house when Greeson's sister called him to come pick her up and that Camp asked Greeson to drive the car because he knew the route. Camp maintained that Greeson fled from the police because he had a suspended license.

1. Greeson claims that the trial court erred when it allowed Long to identify him as the person she saw driving her stolen car because the State stipulated before trial that Long would not be giving eyewitness testimony. We disagree.

A stipulation is " 'any agreement made by attorneys respecting business before the court.' " *McDaniel v. Oliver*.[2] When Greeson's counsel asked the trial court to prevent the State from asking Long questions in the area of identity, the prosecutor responded, "Well, I'll ask any questions I like. I have no knowledge that they can identify anybody. If they can, so be it." There was no agreement by the attorneys.

2. Greeson next claims the trial court erred in admitting Long's rebuttal testimony identifying him as the man she saw driving her stolen car. He complains that the identification violates the rule against sequestration and that her in-court identification was tainted by an improper pre-trial identification. Long identified Greeson as the driver of the car on rebuttal testimony after she had been excused and had remained in the courtroom. Long's testimony was proper as rebuttal testimony: Camp had testified that Greeson first saw Camp with the car three days after it was stolen, but Long could identify Greeson as driving that car on March 22, 1999, the day after the car was reported stolen. See *Phillips v. State*.[3] Any violation of the rule of sequestration goes to the credibility of a witness, and not competency to testify. See *Keller v. State*.[4]

Greeson also argues that the pre-trial identification procedure was extremely suggestive and likely to cause misidentification:

the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, [and] the level of certainty demonstrated by the witness at the confrontation.

(Punctuation omitted.) *Towns v. State*.[5]

---

[2] *McDaniel v. Oliver*, 172 Ga. App. 109, 110 (322 SE2d 1) (1984).
[3] *Phillips v. State*, 251 Ga. App. 179, 181 (5) (553 SE2d 847) (2001).
[4] *Keller v. State*, 221 Ga. App. 846, 848 (3) (473 SE2d 194) (1996).
[5] *Towns v. State*, 136 Ga. App. 467, 468 (1) (221 SE2d 631) (1975).

The police never conducted a formal pre-trial identification of Greeson by Long. They showed Long a photograph of Greeson, named him, and told her he was in the stolen car when it was recovered. We would agree that this is not a proper procedure for a pre-trial identification. But even if a pre-trial identification is tainted, a subsequent in-court identification is admissible if it does not depend on the tainted identification, but has an independent basis. *Jacobs v. State*.[6] Long had an independent basis for her identification of Greeson through her opportunity to view him driving her car. She was within feet of the driver, and her level of attentiveness was apparently very high given that she was looking at her own stolen car. The weight of her identification testimony is a matter for the jury. *Thornton v. State*.[7] Even if the trial court erred in admitting the identification testimony, the error was harmless. Greeson's identity is not a central issue. The evidence is uncontroverted that he was driving the stolen Plymouth when the police chase started. Given the other evidence in the case, it is highly improbable that any error by the trial court in admitting Long's identification testimony contributed to the verdict. See *Bradley v. State*.[8]

3. Greeson also contends the trial court erred in sentencing him as a recidivist because the State did not afford him adequate pre-trial notice that it intended to present evidence of his recidivism. Under *Gates v. State*,[9] prior notice of each conviction to be introduced in aggravation of punishment by the State at the sentencing phase of the trial must be given to the defendant or his attorney. See OCGA § 17-10-2 (a). Greeson argues that the State's attachment of his criminal history to a notice that his convictions would be used in aggravation of punishment was insufficient notice. He relies on *Ramsey v. State*,[10] in which our Supreme Court found that a Federal Bureau of Investigation "rap sheet," listing "no courts, case or indictment numbers; no list of the convictions, pleas, etc.," and which included a disclaimer with regard to its accuracy, was insufficient as a matter of law. In contrast, the prosecution's attached criminal history listed the date of arrest, the court, the offense, the arresting agency, and the disposition of each of Greeson's offenses. The notice is as specific as was found sufficient in *Peters v. State*.[11] The trial court did not err in considering these offenses for purposes of sentencing Greeson as a recidivist.

---

[6] *Jacobs v. State*, 207 Ga. App. 714, 715 (1) (429 SE2d 256) (1993).
[7] *Thornton v. State*, 161 Ga. App. 296, 297 (1) (287 SE2d 749) (1982).
[8] *Bradley v. State*, 148 Ga. App. 722, 724 (2) (252 SE2d 648) (1979).
[9] *Gates v. State*, 229 Ga. 796, 797 (4) (194 SE2d 412) (1972).
[10] *Ramsey v. State*, 241 Ga. 426, 427 (2) (246 SE2d 190) (1978).
[11] *Peters v. State*, 131 Ga. App. 513, 516 (9) (206 SE2d 623) (1974).

4. Greeson next claims the indictment varied fatally from the evidence produced at trial. In an indictment:

> 1) the allegations must definitely inform the accused as to the charges against him as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance "fatal."

(Citation omitted.) *Abney v. State*.[12] The indictment states that Greeson committed theft by receiving "a 1997 Plymouth Breeze, a motor vehicle, the property of Michael Long." Greeson complains that there is no evidence that Michael Long owned the stolen car, or even as to who "Michael Long" was. The evidence does show that Jamie Long bought the car with her husband, whose first name is never given. The variance between the indictment and the evidence is not fatal. The State showed someone other than Greeson owned the Plymouth, and the indictment gave sufficient notice of the property which was the subject of the prosecution. The technical quality of an owner's interest need not be pursued in a prosecution for theft by receiving, because ownership is important only in the sense of whether the goods were owned by someone other than the accused. See *Causey v. State*.[13]

5. Greeson also argues that his defense counsel's failure to discover before trial the identity of Lewis Lonaker, the mechanic who Camp testified "peeled" the ignition on the Plymouth, merits a new trial based on newly discovered evidence. We again disagree.

The six criteria for success in an extraordinary motion for new trial on grounds of newly discovered evidence are: (1) that the evidence has come to Greeson's knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. *Timberlake v. State*.[14]

Even if we accept that Greeson did not know of Lonaker's existence before the trial, Lonaker's testimony would not have been so material that its presentation would have probably produced a differ-

---

[12] *Abney v. State*, 240 Ga. App. 280, 282 (2) (523 SE2d 362) (1999).
[13] *Causey v. State*, 139 Ga. App. 499, 500 (1) (229 SE2d 1) (1976).
[14] *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980).

ent result. Greeson knew Camp was a car thief and that the Plymouth was hot wired. The weight of these facts is not diminished by who actually "peeled" the steering column. Lonaker's testimony is not so directly material to the central question of whether Greeson knew the car was stolen that it would probably have resulted in a different verdict if presented to the jury.

6. Finally, Greeson claims he received ineffective assistance of counsel.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations omitted.) *Chapman v. State*.[15] "The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous." Id. at 350 (2). See also *Strickland v. Washington*.[16]

Greeson points out that his trial counsel based the entire defense on the testimony of Camp, an impeachable felon and car thief, while failing to investigate and secure the testimony of Lonaker. Assuming, without deciding, that counsel's failure to investigate and call Lonaker was ineffective assistance of counsel, Greeson cannot show that but for counsel's errors the outcome of the trial would have been different because the proffered testimony of Lonaker was not so material that it was reasonably likely to change the result of the trial. Greeson argues that this case is similar to *Richardson v. State*,[17] in which we found that defense counsel's deficient performance prejudiced the defense. *Richardson*, however, is distinguishable because we found trial counsel's failure to contact two alibi witnesses could have prejudiced the defense where the State's case relied largely on the identification testimony of the victim. The State's case here was very strong, and Lonaker is not an alibi witness. The trial court did not err in denying Greeson's motion for new trial on grounds of ineffective assistance of counsel.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

---

[15] *Chapman v. State*, 273 Ga. 348, 349-350 (2) (541 SE2d 634) (2001).
[16] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[17] *Richardson v. State*, 189 Ga. App. 113 (375 SE2d 59) (1988).

DECIDED JANUARY 7, 2002 —

*Larry D. Wolfe*, for appellant.

*Patrick H. Head, District Attorney, Kathryn E. Cozzo, Amy H. McChesney, Assistant District Attorneys*, for appellee.