## A03A0057. WAKEFIELD v. THE STATE.
(583 SE2d 155)

ADAMS, Judge.

Ray Wakefield appeals from his conviction of financial identity fraud, theft by receiving stolen property and three counts of forgery in the first degree. We reverse.

On July 3, 2000, Billy Hair, Chairman of the Chatham County Commission, left his Ford Explorer running outside a convenience store while he went inside to pay for gas. When he came out of the store, the Explorer was gone, along with all his personal items in the vehicle, including his checkbooks, credit cards and golf clubs. That same day, Wakefield cashed a check drawn on Hair's business account at a liquor store in Savannah. And the next day, Wakefield cashed another check drawn on Hair's account at the same liquor store.

The third day, July 5, Wakefield presented a third check in the amount of $500. When the liquor store employee was hesitant to cash this check, Wakefield offered to bring his "boss" into the store to

---

[1] 251 Ga. App. 776 (554 SE2d 742) (2001).
[2] 275 Ga. 543 (570 SE2d 327) (2002).

vouch for the check. Wakefield then brought in a man, who identified himself as Hair. The man could present no photo identification, but showed a number of Hair's credit cards. He was unable to provide the store employee with a local telephone number and mispronounced a local street name. The employee then called the Savannah Police Department, and after determining that the checks were stolen, he summoned police to the store. Wakefield was still in the store when police arrived, but the other man quickly left the store and drove off in Hair's Ford Explorer. This man was later identified as Chris Allman, Wakefield's co-defendant.

After Wakefield was read his *Miranda* rights, he said that he thought Allman was Hair, and that the checks were payment for construction work he was doing on Whatley Street in Pooler. He said the $500 check he tried to cash on July 5 was payment in advance for construction work that day. When Detective Don Collier of the Savannah Police Department later investigated, he found no evidence of construction work on the street.

The liquor store employee supplied the police with a videotape of the July 5 incident. The next day, Collier saw Allman, whom he recognized as the man who had identified himself on the tape as Hair, walking along a Savannah street. After stopping Allman to question him, Collier patted him down and located a wallet holder containing credit cards with Hair's name on them. Collier then placed Allman under arrest.

Allman testified at trial that he was from West Virginia and that he had met Wakefield after getting off the bus in Savannah. Wakefield asked Allman if he wanted to earn some extra money by driving him around town. Allman agreed and began driving Wakefield and two other men around to various liquor stores, hotels, and houses in the Ford Explorer. On the morning of July 5, Allman was waiting at a liquor store with another man for Wakefield to cash a check when Wakefield returned to the car and asked him to pose as the owner of the check. Wakefield then handed Allman Hair's credit cards, and Allman went into the store and identified himself as Hair. Allman also testified that he saw Wakefield filling out the three checks that he presented to the liquor store for cashing.

1. Wakefield first asserts that the trial court erred in failing to charge the jury that a witness may be impeached by "proof that the witness has been convicted of a crime involving moral turpitude." He asserts this was error because Allman admitted pleading guilty to felony charges of forgery, financial identity theft, theft by receiving, and credit card theft in connection with the incidents at issue. He argues that the trial court's charge precluded the jury from considering Allman's prior convictions in determining whether his testimony had been impeached.

Wakefield filed a written request for a jury charge on impeachment that included the ground of prior conviction of a crime of moral turpitude. Crimes involving moral turpitude include felonies. *Polk v. State*, 202 Ga. App. 738, 739 (2) (415 SE2d 506) (1992). Nevertheless, during the charge conference, the trial court stated that it would omit that portion of the impeachment charge because "[w]e don't have anybody impeached with crimes of moral turpitude." Wakefield's lawyer raised no objection during the charge conference and did not make any exceptions to the charge. While this could constitute waiver, *Jackson v. State*, 246 Ga. 459, 460 (271 SE2d 855) (1980), the appellate courts in this state "shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." OCGA § 5-5-24 (c).

Generally, "[a] witness's credibility may be impeached upon showing conviction for a crime of moral turpitude, or upon introducing a certified copy of a prior felony conviction." (Citation and punctuation omitted.) *Henderson v. State*, 247 Ga. App. 31-32 (543 SE2d 95) (2000). See also OCGA § 24-9-84. Here, Allman testified during direct examination by the state that he had previously pled guilty to a number of felonies arising out of the incident in question. Our Supreme Court has determined that such testimony is sufficient to justify the giving of a charge on impeachment on the ground of prior convictions. *Carter v. State*, 272 Ga. 31 (2) (526 SE2d 855) (2000). Accordingly, the trial court erred in failing to give such a charge in this case.

The Supreme Court has held that it is reversible error for a trial judge to fail to charge the jury on impeachment by prior felony conviction when the witness involved presents the state's principal testimony against the defendant. *Sapp v. State*, 271 Ga. 446 (520 SE2d 462) (1999). Here, Allman was the state's main witness against Wakefield. Although there was other evidence showing Wakefield's involvement in the crimes, Allman presented crucial testimony on the issue of whether Wakefield knew the checks were stolen and forged at the time he attempted to cash them.

2. Moreover, even if the failure to give the impeachment charge were not harmful as a matter of law under these circumstances, Wakefield would be entitled to reversal on the ground that he received ineffective assistance of counsel. Wakefield asserted that his trial attorney was ineffective in failing to object to the jury charge as given, or in the alternative failing to reserve objections. The proper standard for determining whether a defendant received ineffective assistance of counsel is the two-pronged test announced in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). First, Wakefield must establish that counsel's performance was defi-

cient, and second, he must show that he was prejudiced by that deficient performance. *Cooper v. State*, 258 Ga. App. 825, 833 (7) (575 SE2d 691) (2002).

With regard to the first prong, "[t]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy." *Cooper*, 258 Ga. App. at 833 (7). But Wakefield's trial attorney testified at the hearing on the motion for new trial that his failure to object or make exception to the jury charges was not a tactical decision, but rather an oversight on his part because he was focusing on other matters. He stated that the trial judge was "going to charge what she wants to charge, and that's probably why I didn't make the objection at that point in time" and that he was "preoccupied doing something else when she was actually giving the jury charges."

Under the second *Strickland* prong, Wakefield must show "a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cooper*, 258 Ga. App. at 833 (7). Under the circumstances in this case, "[b]ecause [Allman's] testimony was fundamentally critical to the State's case against appellant, we cannot say there is no reasonable probability that the jury's verdict would have been different absent the trial court's erroneous failure to instruct on witness impeachment." *Sapp*, 271 Ga. at 449 (2).

3. Wakefield also raised additional arguments regarding the trial court's jury charge. But we find that by failing to object to the charge, Wakefield has waived his right to assert those arguments on appeal. And because we do not find the error asserted to be harmful as a matter of law,[1] we do not address them.

4. With regard to Wakefield's remaining enumeration of error, we find that the evidence at trial was sufficient for a jury to find Wakefield guilty of the charges against him beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 4, 2003.

*Diane M. McLeod*, for appellant.

---

[1] See generally *Lewis v. State*, 180 Ga. App. 890 (351 SE2d 100) (1986); *Staffins v. State*, 92 Ga. App. 115, 121 (2) (88 SE2d 45) (1955).

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney*, for appellee.