A04A0349. BOTELHO v. THE STATE.
(601 SE2d 494)

ADAMS, Judge.

Jonathan Botelho appeals after a jury convicted him of burglary. He contends that there was insufficient evidence to enable the jury to find him guilty of burglary and further contends that he received ineffective assistance of counsel. In addition, Botelho argues that his constitutional rights were violated by repeated references during his trial to his pre-arrest silence. Because we find no merit to these arguments, we affirm.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. To sustain the conviction, the evidence must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable doubt.

(Footnote omitted.) *Brown v. State*, 265 Ga. App. 613 (594 SE2d 770) (2004).

Construed in that light, the evidence at trial showed that A. J. Thornton and Chandler McCall spent the night of October 4, 2000, at Botelho's house. While there, Thornton spoke with Michael Hopkins on the phone. During the conversation, the men planned a "job" the next day. Thornton testified that the word "job" in their conversation referred to a burglary. Thornton told Botelho that Hopkins had a "job" to do. Botelho admitted that he understood the word "job" to refer to a burglary, but he denied that Thornton had told him about any "job" or planned burglary.

The next morning, Botelho drove Thornton and McCall over to Hopkins' house, approximately 25 minutes away. Botelho then drove

the three other men to a house in Washington, Georgia, with McCall sitting beside him in his truck and the other two men riding in the bed of the truck. The plan from the night before called for Hopkins and McCall to go inside the house, but when they arrived McCall changed his mind and decided not to go in. While McCall sat in the cab of the truck, with Botelho beside him, Hopkins tried to persuade McCall to go into the house with him. Eventually, Thornton decided to go in McCall's place. Hopkins told Botelho to return in 30 minutes or so to pick them up.

Thornton and Hopkins walked up to the house and knocked on the back door. When no one replied, they broke out the glass on the door and entered the house. Thornton fled when he thought he heard someone cough, but Hopkins remained inside. At around the same time, Debbie Smith, who lived in the house and who was home sick for the day, heard a noise and went to investigate. She discovered her back door open and glass on the floor. She then saw a man in her bedroom kneeling by the nightstand with a stocking cap, bandanna, and a gun. She ran out the back door screaming for her neighbor to call the police. Thornton, who had run to a wooded area, heard a woman scream. Hopkins also fled the home, and he and Thornton met by a nearby building. They saw Botelho driving back to the scene.

By this time, Chief Deputy Sward of the Lincoln County Sheriff's Office had also arrived on the scene to assist the Wilkes County Sheriff's Department with the burglary-in-progress call. He stopped Botelho's truck, with McCall still sitting in the front seat, and talked to them. Chief Deputy Sward asked Botelho what he was doing and he replied that he had come from a softball field in a nearby town.

While talking with Botelho, Chief Deputy Sward noticed someone run across the road and into the wood line. He gave chase, leaving Botelho on the road. After searching the area, police found Thornton hiding in the bushes and he was arrested. Later that day, Hopkins was arrested walking down a dirt road approximately one-half mile from the crime scene.

Botelho testified at trial that he was just giving his friends a ride, something he often did, and that he did not know about the planned burglary. They just told him that they needed a ride to a friend's house in Washington. He said he agreed to give them a ride because he had to make a loan payment in Washington, so he was headed there anyway. Nevertheless, Botelho admitted that he did not stop in Washington to pay his loan, but rather drove around until it was time to return and pick up his friends.

1. Botelho asserts that this evidence was insufficient to support his conviction for burglary. He notes that the evidence showed that he had not participated in or been present during the phone call when the burglary was planned, and thus there was no evidence that he

knowingly participated in the plan. He asserts that any evidence of his knowing participation in the crime was circumstantial and thus, the state was required to disprove every other reasonable hypothesis save that of his guilt. See OCGA § 24-4-6. Botelho contends that the state failed to meet this burden.

But viewed in the light most favorable to the verdict, the evidence showed that Thornton told Botelho that Hopkins had planned a "job," which Botelho understood to mean a burglary. And Botelho agreed to drive Thornton and McCall to pick up Hopkins and then on to a third house where they told him to stop at the end of the driveway. Hopkins was dressed in a dark coverall suit, with a stocking cap, and both Thornton and Hopkins had on bandannas when Botelho dropped them off. In addition, there was evidence that McCall decided not to go into the house and discussed his reservations in front of Botelho. Then, after dropping Hopkins and Thornton off, Botelho drove into the city of Washington past the business where he said he was going to pay his loan, and instead drove around until he went back to pick up the other two. And after being stopped by police, he drove off at the officer's direction, and never returned to retrieve them.

Even if we characterize this evidence as circumstantial, the state need not exclude every other hypothesis save that of the accused's guilt but only reasonable inferences and hypotheses. *Hewitt v. State*, 277 Ga. 327, 330 (1) (b) (588 SE2d 722) (2003). And the question of what is a reasonable hypothesis is for the jury:

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citation omitted.) *Robles v. State*, 277 Ga. 415, 417 (1) (589 SE2d 566) (2003).

We find that the jury was authorized by this evidence to find Botelho guilty beyond a reasonable doubt of knowingly participating in the burglary. See *Gresham v. State*, 246 Ga. App. 705, 707-708 (2) (541 SE2d 679) (2000). Although Botelho denied that Thornton had told him about the "job" and he offered alternative reasons for his actions that day, the jury was not required to accept his version of events. See id.; *Chews v. State*, 187 Ga. App. 600, 603 (1) (371 SE2d 124) (1988).

2. Botelho next asserts that the state's repeated references to his failure to tell Chief Deputy Sward about having dropped off Thornton

and Hopkins earlier at the scene were unconstitutional references to his pre-arrest silence in violation of *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999). In *Mallory*, the Supreme Court of Georgia established a rule that comments upon a defendant's silence or failure to come forward "will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense." Id. at 630 (5). Botelho, however, did not object or move for a mistrial on this ground and cannot raise the issue for the first time on appeal. *Klinect v. State*, 269 Ga. 570, 574 (6) (501 SE2d 810) (1998).

3. Botelho next contends that he received ineffective assistance of counsel on two grounds: (1) because his attorney failed to object to the references to his pre-arrest silence and (2) because his attorney failed to object or reserve any exceptions to the jury charge. To determine whether Botelho received ineffective assistance of counsel, we apply "the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), under which the convicted defendant is required to show both that counsel's performance was deficient and that the deficiency prejudiced the defense." (Citation and punctuation omitted.) *Morton v. State*, 265 Ga. App. 421, 422 (1) (594 SE2d 664) (2004). Moreover, unless the trial court's determination that the defendant received effective assistance of counsel is clearly erroneous, we will affirm. Id.

To prove that he received ineffective assistance of counsel, Botelho must overcome the strong presumption that his attorney's performance fell within the range of reasonable professional conduct:

> The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of counsel after consultation with the client. Trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable. They provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.

(Citation and footnote omitted.) *Pippins v. State*, 263 Ga. App. 453, 457-458 (4) (a) (588 SE2d 278) (2003). See also *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003).

(a) Although Botelho's trial counsel had been admitted to the bar only seven months earlier and Botelho's trial was his first felony criminal jury trial, he was assisted at trial by a lawyer in his firm who had been practicing for 35 to 36 years and had extensive criminal

experience. When questioned about his decision not to object to testimony about Botelho's failure to tell Chief Deputy Sward that he was on the scene to pick up his friends, Botelho's trial attorney replied that he and his assisting counsel felt that Sward's testimony, including both what Botelho said and what he did not say, was helpful to Botelho because it tended to show his ignorance of his co-defendants' intent to commit a crime. Thus, the decision not to interpose an objection was one of trial strategy. Although Botelho and his appellate counsel now disagree with that decision, that disagreement does not provide a basis for granting a new trial on the ground of ineffective assistance of counsel:

> [E]ffectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.

(Citation and punctuation omitted.) *Polk v. State*, 225 Ga. App. 257, 258 (1) (a) (483 SE2d 687) (1997).

(b) Similarly, when questioned about his decision not to reserve exceptions to the jury charge, Botelho's counsel explained that after hearing the charges as given and consulting with his co-counsel, they both concluded that they had no objections to the charge as given. Thus, they made the conscious decision to waive any exceptions to the charge.

Botelho contends, however, that his trial attorney should have objected to the trial court's failure to charge on impeachment by crime of moral turpitude because Thornton, the principal witness against Botelho, had previously pled guilty to burglary in connection with the incident at issue. Botelho's counsel requested such a charge, but the trial court omitted it when charging the jury. At the hearing on the motion for new trial, Botelho's trial counsel was never asked why he failed to object to this omission.

The hearing record does show, however, that Botelho's trial attorney felt that Thornton had been adequately impeached by other means. The trial attorney was questioned as to why he did not introduce Thornton's prior contradictory statements to police into evidence. He replied that he believed that Thornton was not a very strong witness and felt that he had been sufficiently impeached through cross-examination on those prior inconsistent statements to police. The attorney and his co-counsel concluded that the witness had been discredited by these factors. And the trial attorney testified that generally his strategy was to hear the charge as given and

consult with the other attorney before determining whether they should object or reserve exceptions. They determined that the charge was adequate.

Thus, while it certainly may have been advisable to object to the trial court's failure to charge on the additional ground for impeachment, we cannot say based upon the record before us that counsel's failure to object fell outside the range of reasonable trial strategy.

This case is distinguishable from *Wakefield v. State*, 261 Ga. App. 474 (583 SE2d 155) (2003), upon which Botelho relies. In *Wakefield*, the trial attorney waived all exceptions to the charge due to an oversight on his part because he was focusing on other matters. Thus, no question of trial strategy was present in that case.

(c) Botelho also contends that his trial attorney provided inadequate representation by failing to request a charge on mistake of fact. He asserts his attorney should have requested such a charge because he could reasonably have believed that his friends were authorized to enter the victim's house.

But such a charge was not authorized by the evidence. "A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission." OCGA § 16-3-5. Botelho testified that he was totally unaware of any of his co-defendants' plans for breaking or entering the house. Thus, his defense was a lack of knowledge of the crime, not that he knew they had broken into the victim's house, but believed that they were authorized to do so. Compare *High v. State*, 153 Ga. App. 729, 732 (4) (266 SE2d 364) (1980). The trial court charged the jury on mere presence, mere association and the requirement that the state prove beyond a reasonable doubt that Botelho knew that a crime was being committed. Accordingly, we find no basis for granting a new trial on this ground.

(d) Botelho also argues that his trial counsel was inadequate in failing to request a charge on individual determination of guilt, in light of the fact that the other defendants were named in the same indictment as Botelho. But the trial court charged the jury that, although four individuals were indicted together, they were only to be concerned with the case against Botelho and were not to speculate or concern themselves about the other defendants. Given this charge and considering the charge as a whole, we find no error in the trial court's denial of the motion for mistrial.

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JUNE 28, 2004.

*Michael O. Horgan*, for appellant.

*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney,* for appellee.