## A04A0923. WEEKS v. THE STATE.
(608 SE2d 259)

ADAMS, Judge.

Following a jury trial, Lamar Clayton Weeks was convicted on two counts of child molestation and one count of aggravated child molestation. He appeals after the trial court denied his motion for new trial. We affirm.

The evidence, when viewed in the light most favorable to the verdict, shows that the victim was a five-year-old girl, who lived with her parents and one-year-old brother in Douglasville. Weeks and his wife, who had no children, lived next door to the victim's family. Over time, the two families became friends, and a group of neighborhood girls, including the victim, would frequently play at Weeks's house. Weeks allowed the girls to watch videos and took them to his work and for rides on his lawnmower. Weeks and his wife once took the little girls on a picnic and then hosted a sleepover for them at their house. They also took the victim to the mall and out to eat. And on one occasion, Weeks took the child on an out-of-town visit to a relative's farm.

On September 9, 2000, Weeks invited the victim to go to work with him. When she returned home, she played with some of the other neighborhood girls before attending a birthday party. The victim's mother later gave permission for the child to accompany Weeks to a video rental store and to watch a movie at his house. Weeks's wife was out of town, leaving him alone with the child. Weeks brought the victim home at approximately 9:00 p.m., and her mother noticed that the child's behavior was somewhat unusual. The mother asked the child whether she had had a nice time, and the child responded that she and the other girls had a secret club with Weeks. The victim also said that she had a separate secret club with Weeks that did not involve the other girls. She said that she could not tell her mother about the club because Weeks told her that if she did, they could not be friends anymore.

When the mother persuaded the child to tell her about the club, the child said that Weeks had turned off the video they were watching and asked her if she wanted to play a new game that involved one of them standing in a doorway and peeking while the other pulled his or her clothes down. She said that this involved her pulling up her dress and pulling down her underwear, and Weeks's pulling down his pants and underwear. In addition, as part of the game, the child said that Weeks would touch her privates and she would touch his penis. The mother asked the child to demonstrate what Weeks had done and she pulled down her underwear and motioned from her anus up to the area around her vagina, several times. The child also said that Weeks touched her chest under her dress.

The parents did not report the matter immediately to police, but instead moved out of their house the next morning to get away from Weeks and to stay with friends and family. That day, they also contacted Karen Wolfe, a licensed professional counselor who had worked with the family in the past and who agreed to see them immediately.

Wolfe met with the victim privately and tape recorded their conversation. The audiotape was played for the jury at trial. After asking a few preliminary questions about her age, school, and her stuffed animal, Wolfe asked the child what was bothering her. The child then discussed Weeks's "new game" and explained that it involved "touch[ing] each other's privates." She told Wolfe that she touched Weeks's privates even though she did not want to, because she "had to." She said that Weeks wanted her to touch his privates and wanted to touch hers, which she said "kind of hurted." She also said that Weeks told her not to tell anybody about their game.

Afterward, the parents took the child to the Douglas County Sheriff's Office to report the abuse, where they were told to come back the next day. When they returned, they met with Jo Ann Adams, an investigator who specializes in crimes against children. Adams videotaped her interview with the child, which was played to the jury. In that interview, the victim again recounted the incident involving Weeks. Adams sent the child to Scottish Rite Hospital. There, the child was examined by a doctor, who found two abrasions within her vaginal area. The doctor testified that these injuries were fresh and consistent with the child's description of what had occurred, although the scratches were not conclusive evidence of child abuse.

Afterward, the child began six months of counseling with Wolfe, who testified that the child experienced symptoms consistent with those of a child who had been abused, including bedwetting, sleeping problems, nightmares, complaints of pain or itching in genital areas, and severe separation anxiety when away from her mother. Because Wolfe had treated the child both before and after the incident involving Weeks, she could observe the differences in the child's behavior and found them to be significant. Moreover, the child has never recanted her statement of sexual abuse. A teacher's aide at the victim's school also testified that after the incident, the child often complained about aches and pains in her private area and elsewhere, and that she was whiny and clingy and cried easily. The child also told the teacher's aide that someone had hurt her in her private area.

The child, who was seven years old at the time of trial, testified that she was abused by Weeks. Weeks also testified and denied the child's allegations. In addition, he presented several character witnesses in his defense.

1. Weeks first asserts that the trial court erred in allowing Adams to make improper statements about the credibility of other witnesses in the case. Weeks cites a number of instances in the officer's testimony that he contends either constituted improper bolstering or that improperly addressed the ultimate issue in the case.

(a) As an initial matter, we note that Weeks concedes in his brief that some of the testimony he cites would not constitute reversible error standing alone. He objects, instead, to the cumulative effect of the officer's testimony. But this Court has previously rejected such an argument. "[T]his state does not follow a 'cumulative error' rule of prejudice; any error of record must stand or fall on its own merits and is not aided or aggravated by the accumulative effect of other claims of error. [Cit.]" *Pollard v. State*, 260 Ga. App. 540, 542 (2) (580 SE2d 337) (2003).

Therefore, we must address each of the instances cited by Weeks separately. In each of these instances, Weeks's trial attorney either failed to object to the officer's testimony or elicited the testimony on cross-examination, or the trial court sustained his attorney's objections.

(b) To the extent that his attorney failed to object, Weeks has waived the right to argue the matter on appeal. *Farmer v. State*, 268 Ga. App. 831, 834 (4) (603 SE2d 16) (2004); *Hall v. State*, 255 Ga. App. 631, 633 (2) (566 SE2d 374) (2002). Weeks contends, however, that this testimony was plain error requiring reversal. Weeks takes issue with Adams's testimony on direct that, based upon her experience and training, a five-year-old child would not be able to draw a male sex organ unless she had seen it. He also objects to the officer's direct testimony that the child grieved over telling her mother about her secret game with Weeks because he was her best friend. In addition, he cites to an instance in which the officer was asked whether she was concerned that the counselor was fabricating her evidence, and the officer replied, "no." Even to the extent this testimony was improper, in light of the other evidence at trial, we find that it does not amount to plain error requiring a reversal in the absence of an objection. See *Horne v. State*, 262 Ga. App. 604, 606 (1) (586 SE2d 13) (2003); *Ochoa v. State*, 252 Ga. App. 209, 211 (4) (555 SE2d 857) (2001).

(c) Weeks also complains about portions of the officer's testimony elicited during cross-examination. Weeks's attorney asked the officer if the abrasions found during the medical exam was the only factor she relied upon to corroborate the victim's story. The officer responded that she also relied upon the fact that the child's story had been consistent over time and that she had never retracted it. In addition, the attorney asked whether the officer had ever seen a child who had been coached and simply repeated what had been told to her by adults. Adams replied that she had seen children who had been

coached but that she had never seen a five-year-old child who could remember intimate details and draw pictures "if that didn't happen to them." Weeks cannot complain about this testimony, however, because any error was induced by the defense. *Ochoa v. State*, 252 Ga. App. at 211 (3); *Sams v. State*, 239 Ga. App. 715, 717 (3) (521 SE2d 848) (1999).

(d) With regard to the remaining instances, Weeks's attorney objected to the testimony, and the trial court sustained the objections. Further, the trial court twice admonished the prosecutor that he was straying into matters reserved for the jury, including the truthfulness of the witnesses. He instructed the state not to ask the officer to comment upon or analyze the evidence. He also admonished the witness just to answer the questions and not to give speeches. The prosecutor repeated that admonition. Thus, the trial court properly sustained Weeks's objections and gave cautionary directions to the state. Under these circumstances, we find no error. *Pollard v. State*, 260 Ga. App. at 542 (2).

(e) Weeks also asserts that the trial court erred in denying his attorney's motion for a mistrial at the conclusion of the officer's testimony. "A trial court's discretion in granting or refusing to grant a mistrial should not be disturbed unless a mistrial is essential to the preservation of the right to a fair trial. [Cits.]" *Pitts v. State*, 260 Ga. App. 553, 561 (8) (a) (580 SE2d 618) (2003).

Here, the trial judge responded to the motion by noting that he would have sustained additional objections to the officer's testimony. He also acknowledged that the officer's testimony analyzing the evidence was not appropriate. Nevertheless, he denied the motion for mistrial. Although the officer's testimony strayed into improper areas, we find no error in the trial court's denial of the motion.

The child testified that Weeks had abused her, and the evidence showed that she gave generally consistent accounts of the incident to a number of witnesses who questioned her about it. Weeks had the opportunity to question the witnesses' memory and credibility before the jury during cross-examination. There was also evidence from the medical examination that the child had sustained injuries consistent with her account of the events and evidence that her behavior had changed significantly afterward. Thus, although certain portions of the officer's testimony were improper, we conclude that it is highly probable that this testimony did not contribute to the jury's verdict. In addition, although Weeks's attorney failed to request any curative instructions on this issue, and while the better practice may have been to give contemporaneous curative instructions to the jury, the trial court charged the jury at the end of trial that they must determine issues of credibility and truthfulness.

Under these circumstances, we find that the trial court did not abuse its discretion in denying the motion for mistrial. "When a motion for mistrial is made on the ground of inadmissible matters being presented to the jury, the corrective measure to be taken by the trial court is largely a matter of discretion, and where, as here, proper corrective measures are taken and there is no abuse of that discretion, a refusal to grant a mistrial is not error." (Citation and punctuation omitted.) *Williams v. State*, 266 Ga. App. 578, 582 (2) (597 SE2d 621) (2004). See also *Pennymon v. State*, 261 Ga. App. 450, 452 (2) (582 SE2d 582) (2003).

Accordingly, we find no reversible error on this ground.

2. Weeks also asserts that the trial court erred in allowing Adams to offer opinion testimony regarding the profile and attributes of molesters and child victims because the prosecution never tendered the officer as an expert. He takes issue with the officer's testimony that sex offenders come "from all walks of life" and "probably 60 percent of them or better" are acquaintances of the victim and normally someone the child trusts. He also objects on this ground to the officer's testimony, discussed in Division 1 above, that five-year-old children do not know what sexual organs look like unless they have seen them, that most kids consider instances of abuse a secret and that revealing this incident caused the victim in this case grief due to her relationship with Weeks.

But Weeks failed to object to this testimony at trial, and thus has waived appellate review of this claim of error. *Helton v. State*, 268 Ga. App. 430, 432 (2) (602 SE2d 198) (2004). Even if Weeks had properly preserved this issue and to the extent that the officer's testimony represented opinion evidence, we find no error on the ground that the trial court admitted the testimony without first qualifying the witness as an expert. "To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from experience as well as study, and formal education in the subject is not a requisite for expert status." (Footnote omitted.) *McCrickard v. State*, 249 Ga. App. 715, 718 (2) (549 SE2d 505) (2001). Here, Adams testified that she had been a police officer for sixteen years and had specialized in crimes against children, including sexual crimes, for ten years. She said that she handled between 25 and 40 such crimes per month, involving children between infancy and 16 years. Adams based her testimony on her many years of experience in dealing with child victims of abuse. Under these circumstances, no abuse of discretion occurred in admitting this testimony without first qualifying the officer as an expert. Id.

3. Weeks also asserts that he received ineffective assistance of counsel because his trial counsel failed to present expert testimony

regarding the propriety of the interview techniques employed by Wolfe and Adams. Further, he argues that his counsel was ineffective in not hiring or presenting contradictory medical testimony. He also claims that his trial counsel was deficient in failing to timely object or move for a mistrial in connection with the portions of Adams's testimony cited in Division 1 above.

> The two-prong test for determining the validity of a claim for ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable possibility that the outcome of the proceedings would have been different but for counsel's deficiency.

(Citation omitted.) *Ballard v. State*, 268 Ga. App. 55, 59 (5) (601 SE2d 434) (2004). Moreover, this Court will affirm a trial court's determination that a defendant has not been denied effective assistance of counsel in the absence of clear error. *Skillern v. State*, 240 Ga. App. 34, 36 (3) (521 SE2d 844) (1999).

Weeks's trial attorney has practiced law for 30 years, and in that time he has tried several hundred cases. He testified at the hearing on the motion for new trial that he frequently represents defendants in child molestation cases and that he has been successful in getting his clients acquitted in better than 50 percent of those cases. The record demonstrates that Weeks's trial counsel presented a vigorous defense, thoroughly cross-examining witnesses and presenting four character witnesses and Weeks's own testimony.

(a) The decision on whether to call an expert witness is one of trial strategy. "There is a strong presumption that trial counsel provided effective representation, and we will not find ineffectiveness if trial counsel's strategy and trial tactics were reasonable at the time." (Footnotes omitted.) *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). The trial attorney testified at the hearing on the motion for new trial that he did not consider hiring an expert on interviewing techniques because he did not think that the interviewing techniques employed by Wolfe or Adams were improper. He noted that the videotape and audiotape of these statements were presented at trial for the jury's evaluation of who they were going to believe. Thus, trial counsel's decision was one of reasonable trial strategy and does not support a claim of ineffective assistance of counsel. *Pippins v. State*, 263 Ga. App. 453, 457-458 (4) (a) (588 SE2d 278) (2003).

Moreover, although Weeks proffered the testimony of an expert on interviewing techniques at the hearing on the motion for new trial,

he failed to demonstrate a reasonable possibility that this testimony would have resulted in a different outcome at his trial. "To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case." (Citation and punctuation omitted.) *Cupe v. State*, 253 Ga. App. 851, 856 (3) (e) (560 SE2d 700) (2002). Accordingly, it was not clear error for the trial court to find that Weeks's attorney was not ineffective in deciding not to call this expert. See *Greeson v. State*, 253 Ga. App. 161, 166 (6) (558 SE2d 749) (2002).

(b) Similarly, Weeks's trial attorney stated that he did not see any reason to obtain expert consultation or testimony with regard to the medical records. After the state's expert testified that the abrasions found on the victim were consistent with her story of abuse, the attorney elicited testimony on cross-examination that the abrasions could have been the result of something other than child abuse. Thus, the trial attorney stated that the testimony went just as he hoped it would. This decision was, again, a matter of reasonable trial strategy. *Pippins v. State*, 263 Ga. App. at 458 (4) (a).

Moreover, absent a proffer of what the testimony of a medical expert would have been at trial, Weeks cannot show a reasonable probability that the outcome of the trial would have been different if his attorney had hired such an expert. *Cupe v. State*, 253 Ga. App. at 857 (3) (e).

(c) Nor do we find that Weeks's trial attorney was ineffective in failing to raise additional objections to Adams's testimony. Although in retrospect, Weeks's trial attorney stated that he should have raised further objections during Adams's testimony, "[e]ffectiveness is not judged by hindsight or by the result." (Citation and punctuation omitted.) *Botelho v. State*, 268 Ga. App. 129, 133 (3) (a) (601 SE2d 494) (2004). Weeks has failed to show a reasonable possibility that the outcome of his trial would have been different if his attorney had raised such objections, especially in light of the other evidence in the case. And as we have already held that a mistrial was not warranted, trial counsel was not ineffective in failing to move for a mistrial at an earlier point in the testimony.

4. Weeks further contends that the trial court erred in failing to strike a juror who Weeks contends indicated that he could not be fair or impartial and by attempting to rehabilitate the juror. The record does not contain a complete transcript of voir dire in this case, but contains those portions dealing with challenges to certain jurors. One of those was Juror Phillips, who indicated that a child abuse case would bother him and that he would tend to "lean toward the child." Upon further questioning, however, the juror indicated that he would

make every effort to decide the case based upon the law and the evidence, but stated that it would be difficult. The trial judge stated that this juror was "right on the cusp," but that he would not strike him for cause.

Because voir dire and jury selection were not transcribed, there is no contemporaneous record as to whether Weeks exercised a peremptory strike as to Juror Phillips. "If counsel raise issues on appeal relating to voir dire, they also must transcribe the voir dire in order for there to be an appellate review, as an appellant carries the burden of showing error by the record. [Cit.]" *Bryant v. State*, 270 Ga. 266, 272 (4), n. 18 (507 SE2d 451) (1998). The only evidence is the testimony of Weeks's trial counsel at the hearing on the motion for new trial. The attorney recalled that he had been forced to use one of his peremptory strikes on a juror who said he would have difficulty not believing a child.

Pretermitting the issue of whether this evidence is sufficient for appellate review, we find that the trial court did not err in refusing to strike Juror Phillips for cause.

> Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. The decision to strike a juror for cause lies within the sound discretion of the trial court, and that decision will not be disturbed absent an abuse of discretion.

(Citation omitted.) *Reddick v. State*, 264 Ga. App. 487, 495 (5) (a) (591 SE2d 392) (2003).

This is not a case where the juror had a relationship with a party to the case or a stake in its outcome. See, e.g., *Walls v. Kim*, 250 Ga. App. 259 (549 SE2d 797) (2001), aff'd, *Kim v. Walls*, 275 Ga. 177 (563 SE2d 847) (2002). Rather, this is a case where a juror had emotional feelings about the nature of the crime. Although Juror Phillips expressed his discomfort with hearing facts associated with a child molestation case and a tendency to accept the word of a child, he said that he would nevertheless make every effort to determine the case based upon the facts and the law. Under these circumstances, we cannot say that the trial court abused its discretion in denying the motion to strike. "[A] juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service." (Citation and punctuation omitted.) *Reddick v. State*, 264

Ga. App. at 496 (5) (a). See also *Hollis v. State*, 269 Ga. App. 159 (1) (603 SE2d 516) (2004); *Garland v. State*, 263 Ga. 495, 497 (1) (435 SE2d 431) (1993).

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 24, 2004 —
RECONSIDERATION DENIED DECEMBER 14, 2004 — 

*Brenda J. Bernstein*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.