**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 19, 2020**

# In the Court of Appeals of Georgia

A20A0871. WASHINGTON v. THE STATE.

MARKLE, Judge.

Following a jury trial, J-Shawn Washington was convicted of child molestation and criminal attempt to commit incest. Washington appeals from the trial court's denial of his motion for new trial, contending that his trial counsel rendered ineffective assistance by (a) calling a witness whose testimony was prejudicial to his case; and by failing to (b) hire an expert to rebut the State's forensic expert, (c) interview a prosecution witness prior to trial, and (d) cross-examine the victim and another minor witness at trial. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Washington lived in a mobile home with his wife and his two step-children, the then-seven-year-old

victim and her then-four-year-old brother. One afternoon, while driving the children home from school, Washington sat the victim in his lap, and then pulled down her pants and underwear, and rubbed his penis "on the back and the front of her private area." Simultaneously, Washington showed her pornographic videos on his cell phone.

The following night, the children were laying in the only bed in the home, which the family took turns sleeping on. While his wife was asleep on the sofa, Washington got in between the children and told the victim's brother to face the other direction. Washington then pulled the victim's pants down, and rubbed his penis back and forth against her "private areas."

The next morning, the victim told her mother that Washington had been "cheating" with her, and her mother called the police. The responding investigator spoke with the victim, who disclosed that Washington had "rubbed his private part on her private part." The investigator also spoke with the brother, who reported that he knew Washington had done "nasty stuff" to his sister, although he did not see it; and he confirmed that Washington had gotten into the bed and told him to turn the other way. That same day, the investigator conducted forensic interviews of both children, and their statements were consistent with their initial disclosures.

2

A few days later, the children were again interviewed by a forensic interviewer because it appeared that the victim recanted to her mother. The victim told the interviewer that her mother had gone to see a witch doctor, who said that evil spirits were causing the victim to have false memories. The victim also disclosed to the interviewer that her mother had offered her $20 to tell the interviewer about the witch doctor. But the victim believed that the incidents had occurred, and that her memories were real. During his interview, the brother confirmed that his mother had gone to a witch doctor to keep his sister from telling a lie. He also related that his mother told him that they would all go to jail – and that cops killed kids in jail – if he and his sister did not tell the interviewer about the witch doctor. And, again, he confirmed that he knew, but did not see, Washington "put his private in [the victim's] private," and that Washington had made him turn his head away.

The victim was later evaluated by a forensic psychologist, and her statements were consistent with her initial disclosures to the investigator. The psychologist opined that the victim's presentment and behavior were consistent with a victim of sexual abuse. Samples taken from the victim's pubic area during a sexual assault examination matched Washington's DNA. Based on these incidents, Washington was indicted for child molestation and criminal attempt to commit incest.

At trial, the victim's and her brother's testimony was consistent with their earlier disclosures regarding Washington's conduct. Their mother testified that, immediately after the victim told her what Washington had done, she laid the victim naked on the bed, first on her back and then on her stomach, to check for any signs of harm. The mother further testified that she and Washington had sexual intercourse in the bed that same weekend; that the sheets had not been washed afterward; and that, when she checked the victim, she laid her in the same area on the sheets where the sex occurred. The mother stated that she consulted the witch doctor after the victim recanted, and that she only offered the victim money to tell the truth. Washington also testified at trial, generally denying the accusations against him.

The jury returned a guilty verdict on all counts. Washington filed a motion for new trial, contending that his trial counsel was ineffective for all the reasons he raises on appeal. Following a hearing, at which Washington's trial counsel testified, the trial court denied the motion, and this appeal followed.

Washington contends that trial counsel rendered ineffective assistance in several respects. We conclude he has not met his burden to show ineffective assistance of counsel.

4

To succeed on a claim that counsel was constitutionally ineffective, [Washington] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018). Bearing these principles in mind, we address each of Washington's claims of ineffective assistance in turn, finding no merit to them.

(a) Washington claims his trial counsel was ineffective for calling his wife as a witness because her references to the witch doctor were unfavorable to his defense. We disagree.

[T]he decision on which defense witnesses will be called is a matter of trial strategy and tactics and does not usually constitute ineffective assistance of counsel. Indeed, which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer

5

after consultation with his client, and whether an attorney's trial tactics are reasonable is a question of law, not fact.

(Punctuation omitted.) *Howard v. State*, 340 Ga. App. 133, 140 (3) (a) (796 SE2d 757) (2017).

At the new trial hearing, Washington's trial counsel testified that her defense strategy was to accentuate the victim's recantation and to offer an alternative explanation for the presence of Washington's DNA on the victim, and that the wife's testimony was essential in both respects. Trial counsel further testified that she made a tactical decision to call the wife in order to get this evidence on the record, even though she recognized that the wife would necessarily mention the witch doctor. Notably, trial counsel revealed that both Washington and his wife were "adamant" that the wife testify.

Under these circumstances, we cannot say that trial counsel's decision to call Washington's wife was patently unreasonable. See *Howard*, 340 Ga. App. at 140 (3) (a); *McKenzie v. State*, 284 Ga. 342, 347 (4) (b) (667 SE2d 43) (2008) ("matters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it."). This is especially so in light of the fact

6

that several other witnesses had already mentioned the witch doctor in their testimony. At worst, the wife's testimony was merely cumulative of this other evidence. Accordingly, Washington's trial counsel was not ineffective for calling his wife as a defense witness.

(b) Washington next argues his trial counsel was ineffective for failing to hire an expert to review the children's forensic interviews. Pretermitting whether trial counsel's performance was deficient in this regard, Washington has not shown he was prejudiced by any such deficiency.

"To show prejudice on a claim that trial counsel failed to adequately investigate the case, [Washington] had to at least make a proffer as to what additional investigation would have uncovered, and not merely speculate that such information exists and would have made a difference." (Citation and punctuation omitted.) *Lupoe v. State*, 300 Ga. 233, 241 (2) (b) (794 SE2d 67) (2016). But, at the motion for new trial hearing, Washington made no such proffer as to what a potential forensic expert would have testified.

Washington's reliance on *Goldstein v. State*, 283 Ga. App. 1 (640 SE2d 599) (2006), and *Weeks v. State*, 270 Ga. App. 889 (608 SE2d 259) (2004), overruled on

other grounds in *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020), is unpersuasive.[1] In both cases, the defendants proffered the allegedly favorable testimony at the respective new trial hearings. *Goldstein*, 283 Ga. App. at 7-9 (3) (b); *Weeks*, 270 Ga. App. at 894-895 (3) (a) (noting that, despite the proffer, the defendant failed to show he was prejudiced by the omission of the expert testimony at trial). By neglecting to make such a proffer, Washington cannot show that the outcome of the trial would have been different, and thus cannot satisfy the prejudice prong of *Strickland*. *Lupoe*, 300 Ga. at 241 (2) (b); see also *Colbert v. State*, 345 Ga. App. 554, 556-557 (2) (813 SE2d 777) (2018).

(c) Washington also claims his trial counsel was ineffective for failing to interview the DFACS caseworker prior to trial because the caseworker's cumulative and bolstering testimony should have been restricted. On this record, we disagree.

At trial, Washington's counsel objected to the caseworker's testimony initially on relevancy grounds, and then raised discovery issues once it was revealed that the caseworker would testify to disclosures the children made to her. The trial court overruled the objections. The caseworker then testified that the victim disclosed that

---

[1] Washington also relies on *Barlow v. State*, 270 Ga. 54 (507 SE2d 416) (1998), but that case involved a trial court's decision to exclude expert testimony at trial following a proffer, and thus is not germane to the instant case.

her mother had taken her to the witch doctor, who attempted to convince her that her stepfather had not molested her, and that her mother offered her money to recant her allegations. The caseworker testified that the brother confirmed that their mother and the witch doctor tried to convince the victim that she had fabricated the events.

At the new trial hearing, Washington's examination of trial counsel as to this issue was sparse, inquiring only whether trial counsel perceived the caseworker's references to the witch doctor during direct examination as prejudicial.

Pretermitting whether trial counsel's failure to interview the caseworker was deficient, Washington has wholly failed to show how the testimony regarding the witch doctor, which was cumulative of other evidence admitted at trial, affected the outcome of his case. See *Speziali v. State*, 301 Ga. 290, 295-296 (2) (d) (800 SE2d 525) (2017) (defendant did not show he was prejudiced by trial counsel's failure to interview witness who repeated on cross-examination that victim feared the defendant); see also *Williams v. State*, 302 Ga. 474, 483 (IV) (b) (807 SE2d 350) (2017) (defendant failed to show the outcome of trial would have been affected had his trial counsel interviewed State's expert prior to trial).

Trial counsel's testimony at the new trial hearing, in which she opined that these statements regarding the witch doctor were prejudicial, does not affect our

9

analysis. See *Reynolds v. State*, 290 Ga. App. 44, 48 (3), n. 3 (658 SE2d 815) (2008) ("trial counsel's conclusory testimony invades the province of the factfinder with regard to whether his representation was ineffective and our province with regard to whether it was reversible error.") (punctuation omitted), overruled on other grounds by *Reynolds v. State*, 285 Ga. 70 (673 SE2d 854) (2009), superseded by statute on other grounds as recognized by *State v. Orr*, 305 Ga. 729 (827 SE2d 892) (2019).

Moreover, the caseworker's testimony was not bolstering because she did not testify to the credibility of the children's disclosures. *Brown v. State*, 302 Ga. 454, 460-461 (2) (b) (807 SE2d 369) (2017) ("When a witness's statement does not directly address the credibility of another witness . . . there is no improper bolstering."). As such, Washington's trial counsel was not ineffective on this ground.

(d) Finally, Washington contends his trial counsel was ineffective for failing to cross-examine the victim and her brother. Washington again cannot meet his burden.

"Decisions about what questions to ask on cross-examination are quintessential trial strategy and will rarely constitute ineffective assistance of counsel. In particular, whether to impeach prosecution witnesses and how to do so are tactical decisions." (Citations and punctuation omitted). *Harris v. State*, 345 Ga. App. 80, 82 (1) (c) (812

10

SE2d 342) (2018). And, "a tactical decision will not form the basis for an ineffective assistance of counsel claim unless it was so patently unreasonable that no competent attorney would have chosen it." (Citation and punctuation omitted.) *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013).

At the new trial hearing, trial counsel testified that she deliberately refrained from cross-examining the children because their testimony was consistent with their initial disclosures, and she did not want to appear abrasive to the jury as both children were very young. On this record, trial counsel's decision was objectively reasonable, and her performance was not deficient. See *Romer*, 293 Ga. at 344 (3); *Howard*, 340 Ga. App. at 141 (3) (a) (trial counsel did not render ineffective assistance where there was a reasonable explanation for decision not to call a witness).

Accordingly, we find that Washington's trial counsel was not ineffective for the reasons raised on appeal, and we affirm the trial court's denial of Washington's motion for new trial.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur*.